UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RONALD COHN, INC. d/b/a SPROUTS FARMERS MARKET, a California corporation,<br><br>　　　　　　　　　　　　Plaintiff,<br><br>v.<br><br>SPROUTS FARMERS MARKETS, INC., a Delaware corporation; f/k/a and d/b/a SPROUTS FARMERS MARKETS, LLC, a Delaware limited liability company,<br><br>　　　　　　　　　　　　Defendant. | Case No.: 19cv848-JAH (RBB)<br><br>**ORDER:**<br><br>**(1) GRANTING MOTION FOR TEMPORARY RESTRAINING ORDER (Doc. No. 22); AND**<br><br>**(2) SETTING BRIEFING SCHEDULE AND HEARING FOR ORDER TO SHOW CAUSE** |

Pending before the Court is Plaintiff, Ronald Cohn, Inc.'s, *Ex Parte* Motion for Temporary Restraining Order ("TRO") enjoining Defendants Sprouts Farmers Markets, Inc., and Sprouts Farmers Markets, LLC (collectively, "Defendants") from (1) taking any additional audits of Plaintiff's stores until after it has (a) completely disclosed all current safety auditing standards to Plaintiff, and (b) allowed Plaintiff a reasonable period of not less than thirty (30) days to bring its stores into compliance under those standards; (2) conducting additional safety audits based on standards not disclosed to Plaintiff; (3) terminating the Trademark License Agreement ("TLA") based on any safety audits conducted on Plaintiff's stores if the operative safety audit standards were not disclosed to

1

Plaintiff in advance; and (4) instructing its vendors, including its sign vendors, to cease doing business with Plaintiff and advising each of its vendors of the Court's order with respect to this issue. *See* Doc. No. 22.

## BACKGROUND

On May 6, 2019, Plaintiff, Ronald Cohn, Inc. ("Plaintiff" or "Cohn") filed this action against Defendant Sprouts Farmers Markets, Inc, f/k/a and d/b/a Sprouts Famers Market, LLC (collectively, "Defendants") alleging claims for violation of California's Unfair Competition Law (Bus. & Prof. Code § 17200), breach of the covenant of good faith and fair dealing, and tortious interference, among other claims. In October 1990, Sprouts' predecessor, Boney's Services, Inc., entered into a Trademark License Agreement with Plaintiff for the operation of a grocery store in Chula Vista, California. Boney's Services, Inc., and Plaintiff entered into a second Trademark License Agreement in September 1995 allowing Plaintiff to open and operate a second grocery store in Chula Vista, California. In 2011, Sprouts Farmers Market acquired the brand and amended the TLA. Plaintiff now alleges, since the filling of this action, Defendant has taken increasingly aggressive retaliatory action against the Cohn stores, including but not limited to performing various unannounced safety audits based on undisclosed standards and subsequently threatening to terminate the current TLA between the Parties.

## LEGAL STANDARD

The purpose of a temporary restraining order ("TRO") is to preserve the *status quo* before a preliminary injunction hearing may be held; its provisional remedial nature is designed merely to prevent irreparable loss of rights prior to judgment. *See Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers*, 415 U.S. 423, 439 (1974) (noting that a TRO is restricted to its "underlying purpose of preserving the *status quo* and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer"). As such, an applicant for a TRO is required to demonstrate "immediate and irreparable injury, loss or damage." Fed. R. Civ. P. 65(b); *see also Caribbean Marine Serv. Co., Inc. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988).

The standard for issuing a TRO is similar to the standard for issuing a preliminary injunction. *Lockheed Missile & Space Co., Inc. v. Hughes Aircraft Co.*, 887 F. Supp. 1320, 1323 (N.D. Cal. 1995). The Ninth Circuit recognizes two tests for demonstrating preliminary injunctive relief: the traditional test or an alternative sliding scale test. *Cassim v. Bowen*, 824 F.2d 791, 795 (9th Cir. 1987). Under the traditional test, a party must show: "1) a strong likelihood of success on the merits, 2) the possibility of irreparable injury to plaintiff if preliminary relief is not granted, 3) a balance of hardships favoring the plaintiff, and 4) advancement of the public interest (in certain cases)." *Save Our Sonoran, Inc. v. Flowers*, 408 F.3d 1113, 1120 (9th Cir. 2005). Where a party demonstrates that a public interest is involved, a "district court must also examine whether the public interest favors the plaintiff." *Fund for Animals, Inc. v. Lujan*, 962 F.2d 1391, 1400 (9th Cir. 1992).

Alternatively, a party seeking injunctive relief under Fed.R.Civ.P. 65 must show either (1) a combination of likelihood of success on the merits and the possibility of irreparable harm, or (2) that serious questions going to the merits are raised and the balance of hardships tips sharply in favor of the moving party. *Immigrant Assistance Project of the L.A. County of Fed'n of Labor v. INS*, 306 F.3d 842, 873 (9th Cir. 2002); *Sun Microsystems, Inc. v. Microsoft Corp.*, 188 F.3d 1115, 1119 (9th Cir. 1999); *Roe v. Anderson*, 134 F.3d 1400, 1402 (9th Cir. 1998). "'These two formulations represent two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases.'" *Roe*, 134 F.3d at 1402 (*quoting United States v. Nutri-cology, Inc.*, 982 F.2d 394, 397 (9th Cir. 1992)). "Thus, 'the greater the relative hardship to the moving party, the less probability of success must be shown." *Sun Microsystems*, 188 F.3d at 1119 (*quoting Nat'l Ctr. for Immigrants Rights v. INS*, 743 F.2d 1365, 1369 (9th Cir. 1984)).

The Ninth Circuit makes clear that a showing of immediate irreparable harm is essential for prevailing on a TRO. *See Caribbean Marine,* 844 F.2d at 674. "Speculative injury does not constitute irreparable injury sufficient to warrant granting a preliminary injunction." *Id.* Thus, a plaintiff must show the presence of an "immediate threatened injury

as a prerequisite to preliminary injunctive relief." *Id.,* (*citing Los Angeles Memorial Coliseum Commission v. National Football League*, 634 F.2d 1197, 1201 (9th Cir. 1980)).

## **DISCUSSION**

First, through the Emergency Motion and supporting Declaration, Plaintiff sufficiently demonstrates that Plaintiff will suffer immediate irreparable injury if the Court denies the request for a TRO. On January 22, 2020, Defendant issued Plaintiff a Notice of Default demand that required Cohn's store[s] to be brought to "acceptable operational level" within fifteen (15) days of receiving the notice to avoid the possibility of "termination of the TLA." (Cohn Decl. ¶ 44, Exhs. 11 and 12). Defendant provided the notice without regard as to whether a 15-day cure was practicable, nor did Defendant provide Plaintiff with any information as to how to be in full compliance. *Id.*

Additionally, on February 7, 2020, Defendant indicated to Plaintiff, both verbally and in writing, there would be a "hold off on any further audits of Mr. Cohn's stores until 30 days after" a meeting between Cohn and Defendant's representative. (Hollenbeck Decl. ¶ 7, Exhs. D). However, three (3) days later, Defendant conducted an audit and once again failed or refused to provided Plaintiff with the updated current audit standards. *Id.* Defendant's continuous auditing of Plaintiff's store(s) based on undisclosed standards and threatening to terminate the TLA agreement between the Parties is sufficient irreparable harm. "Evidence of threatened loss of prospective customers or goodwill certainly supports a finding of the possibility of irreparable harm." *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.,* 240 F.3d 832, 840 (9th Cir. 2001). Thus, because Plaintiff stands to imminently suffer the termination of the TLA agreement, a significant possibility exists that Plaintiff will suffer irreparable harm if the Court does not grant the TRO.

Second, Cohn has asserted claims for violation of California's Unfair Competition Law, breach of the covenant of good faith and fair dealing, and tortious interference among other claims. *See* Doc. No. 1. Defendant has filed a motion to dismiss on five of the six causes of action and a motion to strike as to one of the causes of action. *See* Doc. Nos. 8 and 11. Although Plaintiff's likelihood of success on the merits is in question, Plaintiff

satisfies the minimum threshold of raising a serious question as to the merits. The Court finds that Plaintiff satisfies this requirement.

Third, the balance of hardships tips sharply in Plaintiff's favor. *Alliance for the Wild Rockies v. Pena*, 865 F.3d 1211, 1217 (9th Cir. 2017); *Immigrant Assistance Project of the L.A. County of Fed's of Labor v. INS*, 306 F.3d 842, 873 (9th Cir. 2002). Plaintiff has demonstrated irreparable harm as a result of Defendant's threats of imminent termination of the TLA due to Plaintiff's inability to pass audits based upon new, undisclosed auditing standards and Defendants' instruction to its vendors to cease doing business with Plaintiff. The weight of these continuing and more recently intensified actions and threats of termination by Defendants during this lawsuit, designed to address the alleged breadth and violations of the TLA, along with Defendants' alleged competition within the TLA's authorized protective area over the last two years, strongly suggest Defendants' coordinated effort to cause imminent, irreparable business injury. Defendants actions to invoke business loss, damage, loss of prospective customers, goodwill and calculated demise of Plaintiff's business is not speculative. *Stuhlbarg International Sales Co. Inc. v. John D. Brush and Co., Inc.,* 240 F.3d 832, 840 (9th Cir. 2001); *National Center for Immigrants Rights, Inc. v. INS*, 743 F.2d 1365, 1369 (9th Cir. 1984) (the greater the relative hardship to the moving party, the less probability of success on the merits must be shown) (citation omitted).

The requested TRO simply requires the Parties to continue operating their respective businesses under the terms of the TLA, including the condition that Plaintiff continues to pay royalties to Sprouts for the use of its trade name. As such, any potential hardship to Sprouts—in light of its size in the market place—appears minimal, if not non-existent.

Lastly, while the Court finds the public interest factor tips slightly in Plaintiff's favor due to the alleged confusion on behalf of customers who seek advertised sales and discounts on Sprouts' products in Plaintiff's stores to which Plaintiff is not made aware, this factor is not a dominant consideration due to the dispute between these two private parties. The reach of the TRO will be limited to Cohn and Sprouts under the terms of the

TLA. The Court, therefore, concludes that Plaintiff has made a sufficient showing of irreparable harm and questions that are serious enough on the merits to warrant the issuance of a TRO. The Court thereby **GRANTS** Plaintiff's Motion for a Temporary Restraining Order. Doc. No. 22.

Accordingly, **IT IS HEREBY ORDERED**:

1. All Defendants and their agents, assigns, employees, officers, attorneys, and representatives are **RESTRAINED AND ENJOINED** from:
    a. Taking any additional audits of the Cohn stores until after it has (a) completely disclosed all operative auditing standards to Cohn and (b) allowed Cohn a reasonable period of not less than thirty (30) days to bring its stores into compliance with the standards;
    b. Taking additional safety audits based on standards not disclosed to Cohn in advance;
    c. Terminating the TLA based on any safety audits conducted on Cohn's stores if the operative safety audit standards were not disclosed to Cohn in advance (specifically, the audits in September 2019 and January 2020); and
    d. Instructing its vendors, including its sign vendors, to cease doing business with Cohn and immediately advising each of its vendors of the Court's Order with respect to this issue.
2. This temporary restraining order is entered on **February 14, 2020,** and shall remain in effect until further order of the Court;
3. Defendants Sprouts Farmers Markets, Inc., and Sprouts Farmers Markets, LLC, are hereby **ORDERED TO SHOW CAUSE** why a preliminary injunction should not issue. Defendants' response to the order to show cause is due on or before **Thursday, February 20, 2020**.
4. Plaintiff's reply is due on or before **Tuesday, February 25, 2020**.

5. The hearing on the order to show cause is set for **Monday, March 2, 2020, at 3:00 pm.**

   **IT IS SO ORDERED.**

DATED: February 14, 2020

_____
JOHN A. HOUSTON
UNITED STATES DISTRICT JUDGE