UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RONALD COHN, INC. d/b/a SPROUTS FARMERS MARKET, a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>SPROUTS FARMERS MARKET, INC., a Delaware corporation; f/k/a and d/b/a SPROUTS FARMERS MARKETS, LLC, a Delaware limited liability company,<br><br>Defendant. | Case No.: 19cv848-JAH (RBB)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS [Doc. No. 41]** |

## **INTRODUCTION**

Pending before the Court is Defendant Sprouts Farmers Market, Inc. ("Sprouts" or "Defendant") motion to dismiss five of the six causes of action brought by Plaintiff Ronald Cohn, Inc.'s ("Plaintiff") in the First Amended Complaint ("FAC"). *See generally* Doc. No. 41. Plaintiff filed an opposition to Defendants' motion and Defendant filed a reply. *See* Doc. Nos. 45, 46. Having carefully considered the pleadings in this action, and for the reasons set forth below, the Court hereby **GRANTS IN PART AND DENIES IN PART** Defendant's motion to dismiss.

# BACKGROUND

In October 1990, Sprouts' predecessor, Boney's Services, Inc. (Boney's), entered into a Trademark License Agreement with Plaintiff for the operation of a grocery store in Chula Vista, California. Doc. No. 40 at 2. Boney's Services, Inc. and Plaintiff entered into a second Trademark License Agreement in September 1995 (collectively "TLAs") allowing Plaintiff to open and operate a second grocery store in Chula Vista, California. *Id.* The TLA allows Plaintiff exclusive rights to use Sprouts' tradename within the designated "Protected Areas" in exchange for royalties that are paid to Sprouts. *Id.* at 7.

In 2011, Sprouts Farmers Market acquired Boney's and amended the TLAs. *Id.* at 3. Plaintiff alleges that Sprouts violated the covenant of good faith and fair dealing as implied in the TLA by preventing Plaintiff from accessing discounted and promotional pricing for products, denying Plaintiff proper advance notice of advertisements sent out through the San Diego Union-Tribune, diverting customers to corporate-owned stores by not placing Plaintiff's store on the Sprouts Farmers Market website, and selling within Plaintiff's Protected Areas through online sales. *Id*.

On April 23, 2020, the Court granted Sprouts' motion to dismiss five of Plaintiff's six claims. On June 4, 2020, Plaintiff filed a First Amended Complaint ("FAC"). *See* Doc. No. 40. Sprouts now moves to dismiss Counts two through six of Plaintiff's FAC for failure to state a claim. *See* generally Doc. No. 41 at 8. Plaintiff filed a response to Defendant's motion and Defendant filed a reply. *See* Doc. Nos. 45, 46. This matter was taken under submission without oral argument. Doc. No. 47.

# LEGAL STANDARD

Sprouts seeks dismissal pursuant to Rule 12(b)(6). Rule 12(b)(6) tests the sufficiency of the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal is warranted under Rule 12(b)(6) where the complaint lacks a cognizable legal theory. *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984); *see Neitzke v. Williams*, 490 U.S. 319, 326 (1989) ("Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law"). Further, a pleading must

contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." Fed. R. Civ. P. 8(a)(2). A complaint may be dismissed, however, where it presents a cognizable legal theory yet fails to plead essential facts under that theory. *Robertson*, 749 F.2d at 534. While a plaintiff need not give "detailed factual allegations," he must plead sufficient facts that, if true, "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007); *see also Pierce v. Wagner*, 134 F.2d 958, 959 (9th Cir. 1943); *Patten v. Dennis*, 134 F.2d 137 (9th Cir. 1943).

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 547). A claim is facially plausible when the factual allegations permit "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. In other words, "the non-conclusory 'factual content' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678). "Determining whether a complaint states a plausible claim for relief will be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

In reviewing a motion to dismiss under Rule 12(b)(6), the Court must assume the truth of all factual allegations and must construe all inferences from them in the light most favorable to the nonmoving party. *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002); *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996). However, legal conclusions need not be taken as true merely because they are cast in the form of factual allegations. *Ileto v. Glock, Inc.*, 349 F.3d 1191, 1200 (9th Cir. 2003); *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981). When ruling on a motion to dismiss, the Court may consider the facts alleged in the complaint, documents attached to the complaint, documents relied upon but not attached to the complaint when authenticity

is not contested and matters of which the Court takes judicial notice. *Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001). If a court determines that a complaint fails to state a claim, the Court should grant leave to amend unless it determines that the pleading could not possibly be cured by the allegation of other facts. *See Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995); *Knappenberger v. City of Phoenix*, 566 F.3d 936, 942 (9th Cir. 2009).

## DISCUSSION

Sprouts moves to dismiss Plaintiff's claims for violation of California's Unfair Competition Law, intentional and negligent tortious interference, breach of good faith and fair dealing, and declaratory relief.

### A. California's Unfair Competition Law ("UCL")

Defendant contends Plaintiff's claim for relief under the California Unfair Competition Law ("UCL") fails as a matter of law. California's UCL prohibits any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. "Each prong of the UCL is a separate and distinct theory of liability" and "an independent basis for relief." *Lozano v. AT&T Wireless Servs., Inc.,* 504 F.3d 718, 731 (9th Cir. 2007) (citation omitted). Plaintiff argues Defendant violated the UCL under all three prongs. *See* Doc. No. 45 at 6-17. The Court will discuss each in turn.

#### i. Unlawful Prong

Under the "unlawful prong," Plaintiff alleges Defendant's violation of the California Franchise Investment Law ("CFIL") serves as a predicate to Plaintiff's UCL claim. *See* Doc. No. 45 at 8. To establish a UCL claim under the "unlawful" prong, the plaintiff must show the challenged business practice must be one prohibited by civil, criminal, federal, state, municipal, statutory, regulatory, or court-made laws. *People v. McKale*, 25 Cal. 3d 626, 626 (1979).The CFIL provides "each prospective franchisee with the information necessary to make an intelligent decision regarding franchises being offered,…to prohibit the sale of franchises where the sale would lead to fraud or a likelihood that the franchisor's promises would not be fulfilled, and to protect the

franchisor and franchisee by providing a better understanding of their business relationship." Cal. Corp. Code § 31001.

Here, Defendant argues Plaintiff's CFIL claim cannot be used as a predicate for Plaintiff's UCL claim as it is barred by the CFIL's four-year statute of limitation (SOL). *See* Doc. No. 41 at 21; *see also* Cal. Corp. Code § 31330. However, as the Court determined during the hearing on the previous motion to dismiss, whether Plaintiff's CFIL claim is barred by the SOL is not dispositive. Rep. Tr. 8:23-9:6, April 23, 2020. A private Plaintiff may bring a UCL action even when the alleged violation has no private right of action. *See Kasky v. Nike, Inc.,* 27 Cal. 4th 939, 950 (2002).

Sprouts next alleges that Plaintiff's CFIL claim is barred by the UCL's four-year SOL. *See* Doc. No. 41 at 15. The UCL provides that "[a]ny action to enforce any cause of action pursuant to [the UCL] shall be commenced within four years after the cause of action accrued." Cal. Bus. & Prof. Code § 17208. On a motion to dismiss based on the SOL, the Court must assess whether "the running of the statute is apparent on the face of the complaint." *Huynh v. Chase Manhattan Bank,* 465 F.3d 992, 997 (9th Cir. 2006) (quoting *Jablon v. Dean Witter & Co.,* 614 F.2d 677, 682 (9th Cir. 1980) ("When a motion to dismiss is based on the running of the SOL, it can be granted only if the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove that the SOL was tolled.")).

Here, Plaintiff alleges Defendant violated the CFIL by failing to register the franchise with California's Department of Business Oversight and failing to disclose certain information. *See* Doc. No. 45 at 14. Plaintiff further contends that since 2017, Defendant has materially changed its relationships with Plaintiff by making material modifications to the franchisee-franchisor relationship. *Id.* at 14. In considering whether the complaint is sufficient to state a claim, the Court will take all material allegations as true and construe all reasonable inferences from them in the light most favorable to the Plaintiff. *See Thompson v. Davis,* 295 F.3d, at 895; *NL Indus., Inc. v. Kaplan,* 792 F.2d 896, 898 (9th Cir. 1986). Based on Plaintiff's allegations, the Court concludes that

Plaintiff has enumerated sufficient facts and theories that permit a reasonable inference of liability relating to an "unlawful" prong, UCL claim. As such, Plaintiff has stated a plausible CFIL claim under the "unlawful" prong.

Accordingly, Defendant's motion to dismiss Plaintiff's UCL unlawful prong claim is DENIED.

### ii. Unfair Prong

The unfair prong of the UCL prohibits a business practice that "violates established public policy or if it is immoral, unethical, oppressive or unscrupulous and causes injury to consumers which outweighs its benefits." *McKell v. Washington Mut., Inc.,* 142 Cal. App. 4th 1457, 1473 (2006). California law is currently unsettled regarding the standard applied to consumer claims under the unfair prong of the UCL. *See Davis v. HSBC Bank of Nevada, N.A.,* 691 F.3d 1152, 1169 (9th Cir. 2012) (citing *Lozano v. AT&T Wireless Servs., Inc.,* 504 F.3d 718, 735-36). Under the traditional balancing test, "an act or practice is unfair if the consumer injury is substantial, is not outweighed by any countervailing benefits to the consumers or to competition, and is not an injury the consumers themselves could reasonably have avoided." *Berryman v. Merit Property Management, Inc.,* 152 Cal.App.4th 1544, 1555 (2007). Under the *Cel-Tech* test, a business practice is unfair if the plaintiff alleges that a defendant violated a "legislatively declared policy or proof of some actual or threatened impact on competition." *Cel-Tech Commc'ns. Inc. v. L.A. Cellular Tel. Co.,* 20 Cal.4th 163, 186 (1999). The Court need not go through the analytical exercise of deciding whether the *Cel-Tech* or balancing test should apply. Although the balancing test was criticized by the court in *Cel-Tech,* the Ninth Circuit in Lozano ultimately concluded that either test can be utilized to satisfy the "unfair" prong.

Here, Plaintiff alleges the "unfair" prong is satisfied under the *Cel-Tech* test as Defendant's alleged violations of the CFIL is tethered to legislatively declared policies. *See* Doc. No. 45 at 16. Plaintiff alleges Defendant's failure to register or otherwise disclose material modifications are directly tethered to California's policies of protecting

"the franchisor and franchisee by providing a better understanding of the relationship between the franchisor and franchisee" and preventing "fraud or a likelihood that the franchisor's promises would not be fulfilled. *See* Doc. No. 45 at 16; *see also* Cal. Corp. Code § 31001. Defendant contends violations of the CFIL are time barred. *See* Doc. No. 41 at 23. However, as stated above, Plaintiff's CFIL claim is not considered time bared by the UCL's four-year statute of limitation on the face of the complaint. At this stage of the proceedings, Plaintiff's allegations are sufficient to state a claim under the "unfair" prong of the UCL. Plaintiff's unfair prong claim is tethered to California's policy of protecting franchisor-franchisee relationship. Plaintiff's allegations therefore adequately plead a UCL claim under the "unfair" prong.

Accordingly, Defendant's motion to dismiss Plaintiff's UCL unfair prong claim is DENIED.

### iii. Fraudulent

Plaintiff claims Sprouts engaged in fraudulent conduct in violation of the UCL by misleading consumers into believing Sprouts' advertised products were available at Plaintiff's stores. *See* Doc. No. 45 at 20-23. The "fraudulent" prong of the UCL is "governed by the reasonable consumer test": a plaintiff may demonstrate a violation by "show[ing] that [reasonable] members of the public are likely to be deceived." *Williams v. Gerber Prods. Co.,* 552 F.3d 934, 938 (9th Cir. 2008) (citations and quotation marks omitted). This deception need not be intentional. *See In re Tobacco II Cases,* 46 Cal. 4th 298, 311 (2009).

Before the Court proceeds with deciding the merits of the UCL claim under the fraudulent prong, the Court must first determine whether Plaintiff has standing. *See O'Connor v. Uber Tech.,* 58 F. Supp. 3d 989, 1002 (N.D. Cal. 2014). Under the UCL, standing is limited to plaintiffs who have "suffered injury in fact and ha[ve] lost money or property as a result of the unfair competition." Cal. Bus. & Prof. Code § 17204. To satisfy this standard, a plaintiff must demonstrate that he actually relied upon the alleged deceptive or misleading statements. *See In re Tobacco II Cases,* 46 Cal. 4th at 306, 326.

Moreover, "courts have recognized that UCL fraud plaintiffs must allege their own reliance – not the reliance of others – to have standing under the UCL." *O'Connor*, 58 F. Supp. 3d at 1002.

Here, the alleged fraudulent conduct consists of Sprouts misleading consumers by advertising products that were unavailable at Plaintiff's stores. However, Plaintiff is not a member of the consumer class that has standing to assert the theories of deceit. Rather, Plaintiff alleges that potential consumers relied on Sprouts' advertising to assume products were available at Plaintiff's stores. Since Plaintiff does not allege its own reliance, Plaintiff does not have standing to challenge these advertisements under the fraudulent prong of the UCL. *See O' Connor*, 58 F. Supp. 3d at 1003 (dismissing a UCL fraudulent prong claim brought by Uber drivers because the drivers "have not alleged their own reliance on Uber's misrepresentations" but only the reliance of "Uber's customers"); *see also U.S. Legal Support, Inc. v. Hofioni,* 2013 WL 6844756, at *15 (E.D. Cal. Dec. 2013) (holding that Plaintiff's fraudulent claim fails for lack of reliance where "Plaintiff is not a consumers of Defendants' services").

Accordingly, Defendant's motion to dismiss Plaintiff's UCL fraudulent prong claim is GRANTED.

**B.     Intentional and Negligent Interference with Economic Relations**

Defendant moves to dismiss Plaintiff's claims for negligent and intentional interference with prospective economic relations on the basis that Plaintiff failed to allege an independent wrongful act and that the claim is barred by the stranger doctrine. *See* Doc. No. 41 at 6. To state a claim for tortious interference with an economic advantage, sufficient facts must be plead which indicate: "(1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant." *CRST Van Expedited, Inc. v. Werner Enterprises, Inc.*, 479 F.3d 1099, 1107–

08 (9th Cir. 2007). The difference between intentional interference and negligent interference with prospective business advantage relates to the defendant's intent. *Redfearn v. Trader Joe's Co.* 2o Cal. App. 5th 989, 1006 (2018).

### i. Independent Wrongful Act

Unlike tortious interference with a contract claim, a plaintiff alleging a tortious interference with an economic advantage or business interference claim "must also show that the defendant's action 'was wrongful "by some measure beyond the fact of the interference itself.'" *Popsescu v Apple, Inc.*, 1 Cal. App. 5th 39, 44 (2016); citing *Della Penna v. Toyota Motor Sales, U.S.A., Inc.,* 11 Cal.4th 376, 392 (1995). "'[A]n act is independently wrongful if it is unlawful, that is, if it is proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard[,]'" *Edwards v. Arthur Anderson LLP,* 44 Cal. 4th 937, 944 (2008), and not merely the product of an improper, but lawful, purpose or motive. *Korea Supply Co.,* 29 Cal. 4th 1134, 1159 fn. 11 (2003). Such conduct must also be independently actionable, meaning the legal standards must "provide for, or give rise to, a sanction or means of enforcement for a violation of the particular rule or standard that allegedly makes the defendant's conduct wrongful." *Stevenson Real Estate Servs., Inc. v. CB Richard Ellis Real Estate Servs., Inc.,* 138 Cal. App. 4th 1215, 1223 (2006).

Here, Plaintiff identifies the purported UCL claim as the independently wrongful conduct of Sprouts. *See* Doc. No. 45 at 18. Plaintiff alleges that Defendant's "deceptive newsprint advertising to its customers" and Sprouts' collusion with third-party online delivery service providers illustrates independent wrongful conduct to satisfy a tort claim. *Id.* However, as stated above, Plaintiff UCL claim is directly associated with the TLA and is not a stand-alone tort cause of action. There are no independently wrongful acts alleged to be independent of the interference itself. Plaintiff FAC fails to show how the alleged wrongful interfering act is independently tortious towards a third party. *Korea Supply Co., supra,* 29 Cal. 4th at 1163. As such, there are insufficient allegations supporting the required elements of an interference claim.

### ii. Stranger Doctrine

Nevertheless, Plaintiff's next hurdle is to sufficiently allege that Sprouts is a "stranger" to the relationship between Plaintiff's stores and the customers. Plaintiff argues that Sprouts is a "stranger" to this relationship because: (1) Plaintiff operates solely within the "protected area;" (2) services the customers within that area and 3) Sprouts' only interest is to collect royalties, and as such the relationship is minimal and indirect at best. *See* Doc. No. 45 at 19-20. Sprouts contends the interference claims are barred by the stranger doctrine because Sprouts has a legitimate interest in the customers of the Sprouts brand and has a financial interest from each sale as the sales are a basis for calculations of royalties paid to Sprouts. *See* Doc. No. 41 at 17.

In *Applied Equipment Corp. v. Litton Saudi Arabia Ltd.*, the California Supreme Court addressed the issue of whether a party to a contract could be liable in tort for conspiracy to interfere with its own contract. 7 Cal. 4th 503, 508-509 (1994). The court held that a contracting party cannot be held liable in tort for conspiracy to interfere with its own contract as "[t]he tort duty not to interfere with the contract falls only on strangers-interlopers who have no legitimate interest in the scope or course of the contract's performance." *Id.* at 514. Although *Applied Equipment* was not specifically cited in *Marin Tug,* the Ninth Circuit in *Marin Tug* also invoked and applied the stranger doctrine in deciding whether the wrongfulness element of the claim for tortious interference with prospective economic advantage was satisfied. In reaching its decision, the Ninth Circuit emphasized that "California law has long recognized that the core of intentional interference business torts is interference with an economic relationship by a third-party *stranger* to that relationship, so that an entity with a direct interest or involvement in that relationship is not usually liable for harm caused by the pursuit of its interests." *Marin Tug & Barge, Inc. v. Westport Petroleum, Inc.,* 271 F.3d 825, 832 (9th Cir. 2001).

As in *Marin Tug and Brage*, Sprouts asserts here that it has a direct interest in Plaintiff's business, both Sprouts and Plaintiff have an economic benefit from the sales

acquired from Plaintiff's stores, and even though the means in which Sprouts used to advertise by allegedly operating within the "protected area" of the TLA may be in dispute, Sprouts still holds an interest monetarily, and in the operation of the Sprouts brand name. As the Court stated in granting Sprouts' prior motion to dismiss, Sprouts has a direct interest in Plaintiff's business and is not a stranger to the relationship between Plaintiff and its customers. First, without the TLA, Plaintiff would not be operating the Sprouts brand stores. Second, both Sprouts and Plaintiff have an economic benefit from the sales acquired from Plaintiff's stores. *See Marin Tug & Barge,* 271 F.3d at 834 (holding that "Shell and Marin Tug had a mutual economic interest in delivering the oil safely and cleanly and were dependent upon each other to do so. In this situation, there is nothing wrongful under California law about the means Shell chose to advance its interests, a simple refusal to deal with Marin Tug or to load its oil on Marin Tug's barges."). Although the means in which Sprouts use to advertise was potentially operating within the "protected area" of the TLA and the alleged collusion with vendors to disassociate from Plaintiff may be in dispute, Sprouts still holds an interest monetarily, and in the operation of the Sprouts brand name. Plaintiff has once again failed to plead with legal sufficiency that Sprouts is a "stranger" to Plaintiff's business operation.

Accordingly, Defendant's motion to dismiss Plaintiff's claims for negligent and intentional interference with prospective economic relations is GRANTED.

### C. Breach of the Covenant of Good Faith and Fair Dealing

Defendant argues that Plaintiff's claim for breach of the implied covenant of good faith and fair dealing should be dismissed because it is not a separate form of relief from Plaintiff's express breach of contract claim. *See* Doc. No. 41 at 28. Defendant further alleges the only two theories of liability that are not included in the express breach of contract claim are: 1) removing Plaintiff's stores from the Sprouts Farmers Market website and online store locator, and 2) deterring online delivery vendors from doing business with Plaintiff. *Id.* at 30. Plaintiff argues in response that the breach of the implied covenant of good faith and fair dealing seeks to adjudicate different rights under

the contract; including, Defendant's unannounced operational audits and refusal to provide Plaintiff with safety standards. *See* Doc. No. 45 at 29.

Under California law, every contract contains an implied-in-law covenant of good faith and fair dealing. *Foley v. Interactive Data Corp.,* 47 Cal.3d 654, 683-84 (1988). The covenant exists to ensure that "each party [does] not [] do anything which will deprive the other parties thereto of the benefits of the contract." *Harm v. Frasher,* 181 Cal. App. 2d 405, 417 (Ct. App. 1960). The implied covenant does not alter a party's existing rights or duties under a contract. *See Guz v. Bechtel Nat. Inc.,* 24 Cal. 4th 317, 327 (2000) ([W]hile the implied covenant requires mutual fairness in applying a contract's actual terms, it cannot substantively alter those terms."). Rather, the implied covenant supplements "the express contractual covenants, to prevent a contracting party from engaging in conduct which (while not technically transgressing the express covenants) frustrates the other party's rights to the benefits of the contract." *Avidity Partners, LLC v. State,* 221 Cal. App. 4th 1180, 1204 (2013).

Here, in accordance with the facts alleged in the FAC, Plaintiff has stated a plausible claim for breach of the implied covenant of good faith and fair dealing. Plaintiff has alleged that an express contract existed with Sprouts. Therefore, Defendant had a duty to execute the contract's purposes in good faith. The exact nature and scope of this duty is a factual inquiry and is based on the purposes of the TLA, the express terms of the TLA, and the reasonable expectations of both parties. Plaintiff's FAC contains sufficient facts to sustain the alleged violation of the implied covenant of good faith and fair dealing claim at this stage of the litigation.

Accordingly, Defendant's motion to dismiss Plaintiff's claim for breach of good faith and fair dealing is DENIED.

### D. Declaratory Relief

Defendant seeks to dismiss Plaintiff's declaratory relief claim because it is duplicative of Plaintiff breach of contract claim. *See* Doc. No. 41 at 31. "The Ninth Circuit has directed district courts faced with whether to entertain claims for declaratory

relief to consider, among other factors, whether the claim will…serve some [] useful purpose." *Top Agent Network, Inc. v. Zillow, Inc.,* 2015 WL 7709655, at *9 (N.D. Cal. Apr. 2015) (*citing Gov't Emps. Ins. Co. v. Dizol,* 133 F.3d 1220, 1225 (9th Cir. 1998). For that reason, courts often "dismiss[] companion claims for declaratory relief where the breach of contract claims resolved the dispute completely and rendered additional relief inappropriate." *Davis v. Capitol Records, LLC,* 2013 WL 1701746, at *3 (N.D. Cal. Apr. 2013).

Here, Plaintiff alleges that although there are several issues sought to be adjudicated that overlap with the express contract claim, some of the issues; such as Sprouts' duty to re-list Plaintiff on its website, that are not included and are separate from the contract claim. *See* Doc. No. 45 at 31. Claims for declaratory relief are not independent causes of action, but rather the ultimate prayer for relief. *Lane v. Vitek Real Estate Indus. Grp.,* 713 F. Supp. 2d 1092, 1103 (E.D. Cal. 2010). A plaintiff is not entitled to such relief without a viable underlying claim. As such, when the underlying claim is dismissed, the declaratory relief cause of action must be dismissed as well. *Shaterian v. Wells Fargo Bank, N.A.,* 829 F. Supp. 2d 873, 888 (N.D. Cal. 2011). Plaintiff's UCL unlawful prong, UCL unfair prong, and good faith and fair dealing claims survive this motion to dismiss. As such, Plaintiff's declaratory relief claim can be substantiated by the alleged tort claims and, at this stage of the proceedings, Plaintiff may plead alternative relief.

Accordingly, Defendant's motion to dismiss Plaintiff's declaratory relief claim is DENIED.

///
///
///
///
///
///

# CONCLUSION

For the reasons set forth above, IT IS HEREBY ORDERED:

1. Defendant's motion to dismiss is **GRANTED IN PART AND DENIED IN PART**.
2. Defendant's motion to dismiss Plaintiff's UCL unlawful and unfair prong claims are **DENIED**.
3. Plaintiff's UCL fraudulent prong claim is **DISMISSED with leave to amend**.
4. Plaintiff's claims for intentional and negligent tortious interference are **DISMISSED with leave to amend**.
5. Defendant's motion to dismiss Plaintiff's breach of good faith and fair dealing claim is **DENIED**.
6. Defendant's motion to dismiss Plaintiff's declaratory relief claim is **DENIED**
7. Plaintiff may file an amended Complaint on or before February 15, 2021.

**IT IS SO ORDERED.**

DATED: January 13, 2021

_____
Hon. John A. Houston
United States District Judge